

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NMA/MMS                                   *271 Cadman Plaza East*
                                          *Brooklyn, New York 11201*

July 11, 2012

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Anthony Ciliento
           Criminal Docket No. 11-651 (S-1) (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter in connection with the defendant Anthony Ciliento's sentencing, which is scheduled for July 18, 2012.  On March 16, 2012, Ciliento pled guilty to a lesser-included offense of Count One of the above-captioned indictment, charging him with cocaine distribution conspiracy, in violation of 21 U.S.C. § 846.

      In his sentencing submission, the defendant requests a sentence of time served based upon his family circumstances and alleged post-offense rehabilitation.  (See Ltr. From Steven Zissou, Esq. to the Court, dated June 17, 2012 (Docket Entry No. 31) ("Def.'s Ltr.")).  For the reasons set forth below, the government respectfully submits that a sentence within the advisory Guidelines range of 37 to 46 months is necessary to provide just punishment for the offense and for specific and general deterrence, pursuant to 18 U.S.C. § 3553(a).

I.   The Applicable Sentencing Guidelines Range

      As set forth in Pre-Sentence Investigation Report ("PSR"), the Probation Department has determined that the defendant's total offense level is 21 and his Criminal History Category is I, resulting in an advisory sentencing range under the United States Sentencing Guidelines ("Guidelines") of 37 to 46 months.  (PSR ¶ 51).

The Honorable Brian M. Cogan
July 11, 2012
Page 2

II. Consideration of Section 3553(a) Factors

For the reasons set forth below, the government respectfully submits that a sentence including some term of incarceration is necessary to provide just punishment for the offense and for specific and general deterrence, pursuant to 18 U.S.C. § 3553(a).

A. Legal Standard

In United States v. Kimbrough, 552 U.S. 85 (2007), the Supreme Court reiterated that, "[w]hile rendering the Sentencing Guidelines advisory, United States v. Booker, 543 U.S. 220, 245 (2005), we have nevertheless preserved a key role for the Sentencing Commission . . . . [D]istrict courts must treat the Guidelines as 'the starting point and the initial benchmark,' Gall v. United States, 552 U.S. 38, 49 (2007)." 552 U.S. at 89. The Court further stated that "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" Id. at 108 (quoting Rita v. United States, 551 U.S. 338, 350 (2007)); see also United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).

In Gall, the Supreme Court elucidated the proper procedure for sentencing courts to follow in considering whether to adhere to the applicable Guidelines range: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall, 552 U.S. at 49 (citation omitted). Next, a sentencing court should "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted).

B. Nature and Circumstances of the Offense

The charges in this case stem from the defendant's participation in a cocaine distribution organization operating in Brooklyn, New York, between 2002 and 2009. The defendant was a close friend of the leader and organizer of the drug

The Honorable Brian M. Cogan
July 11, 2012
Page 3

organization, CW-1, who is now cooperating with the government.[1] (Id.)  CW-1 has advised that he first became acquainted with the defendant in 2001 or 2002 and shortly thereafter, the defendant approached CW-1 to collect money from his drug organization on behalf of Anthony Seccaficco, a soldier in the Bonanno organized crime family (the "Bonanno family").  CW-1 further advised that the two men (the defendant and CW-1) became very close quickly.  The defendant participated in the narcotics trafficking organization over many years, including by (1) answering the drug telephone to intake and process customer requests for cocaine, (2) bagging cocaine for distribution, (3) allowing his home to be used for "switch-ups" when the drug "runners" exchanged cocaine between shifts, and (4) meeting with the main cocaine supplier to pick up cocaine and make payments.  (Id.)  According to CW-1, the defendant was paid in cocaine or cash for his efforts.  CW-1 also advised that the defendant stored CW-1's guns in his residence during this same time period.

Another cooperating witness CW-2 has advised that the defendant was a customer of the narcotics trafficking organization in the 2000s.[2]  CW-2 further advised that the defendant lent his car to another supervisor in the drug organization for use in making cocaine deliveries on numerous occasions.  According to CW-2, on approximately five to ten occasions, the defendant drove CW-2 in his own car to make drug deliveries.  CW-1 had also used Ciliento's residence in order to count drugs and exchange money.

---

[1] CW-1 pleaded guilty, pursuant to a cooperation agreement with the government, in the Eastern District of New York to: (1) racketeering conspiracy, including predicate acts of extortion/extortion conspiracy, illegal gambling, robbery conspiracy, (2) related firearms charges, and (3) cocaine distribution conspiracy involving five or more kilograms of cocaine. He is cooperating with the government in the hopes of obtaining leniency in sentencing and entry into the Witness Security Program.

[2] CW-2 pleaded guilty, pursuant to a cooperation agreement with the government, in the Eastern District of New York to cocaine distribution conspiracy involving five or more kilograms of cocaine.  He is cooperating with the government in the hopes of obtaining leniency in sentencing.

The Honorable Brian M. Cogan
July 11, 2012
Page 4

      Based upon information provided by CW-1, CW-2 and other confidential sources, the government estimates that the defendant is accountable for approximately 400 grams of cocaine based upon his involvement in the drug organization.

      Narcotics trafficking is a serious offense, and at the time the defendant was involved in the narcotics trafficking organization, he, CW-1 and another witness were also active participants in Bonanno family soldier Anthony Seccaficco's crew. They provided Seccaficco with cocaine from the cocaine distribution operation and also engaged in other crimes on behalf of the Bonanno family, including illegal gambling, robbery conspiracy and extortion. With regard to the crime of conviction, CW-1's organization distributed well in excess of five kilograms of cocaine in the New York City area over the time period it operated. Accordingly, the nature and circumstances of the offense weigh in favor of a sentence within the advisory Guidelines range for the purposes of reflecting the seriousness of the offense and promoting respect for the law and general and specific deterrence. See 18 U.S.C. § 3553(a)(1), (a)(2).

    C.    History and Characteristics of the Defendant

      At the time of the charged conduct, the defendant was a Bonanno family associate assigned to Anthony Seccaficco's crew. According to CW-1, the defendant was Seccaficco's "right hand man." CW-1 advised that Seccaficco ran an illegal gambling operation on behalf of the Bonanno family. The gambling operation was telephone-based and involved placing sports bets through an overseas office. CW-1 further advised that he and the defendant extorted a bar in the Bronx, New York, for not making proper payments to the Bonanno family. On that occasion, the defendant entered the bar, put a gun to the head of one of the two individuals present inside the bar, and stated that the bar was not supposed to open unless they had paid the money owed. On other occasions, the defendant and CW-1 collected money from strip clubs and other individuals who owed Seccaficco money.

      The information regarding the defendant's relationship with the Bonanno family is corroborated by recordings made of the defendant in August 2009, over a full year into his service to the New York City Fire Department.[3] During one such

---

[3] According to information provided by the Fire Department, the defendant was formerly appointed on July 1, 2008.

The Honorable Brian M. Cogan
July 11, 2012
Page 5

conversation, the defendant discussed his relationship with Seccaficco, referring to him as "our friend."  During this discussion, the defendant repeatedly stated that he was uncomfortable talking about Seccaficco and other things on the telephone, including the identities of the individuals with whom he was in contact.  During another recorded discussion in August 2009, a criminal associate complained to the defendant after the defendant told him that Seccaficco was ordering him to take the plea deal offered by the state on his case.  The defendant responded, in sum and substance, that "they" (a reference to Seccaficco and unknown others) spoke to a number of lawyers about the case and the deal was a "gift."

Against this backdrop of prolonged criminal activity and association, the defendant argues that his family circumstances and other personal circumstances, including his military service and alleged post-offense rehabilitation, counsel in favor of a sentence of time served.  First, as to the defendant's family circumstances, the families of all defendants inevitably face adverse consequences as a result of their conviction and incarceration.  That his wife and child would be financially and emotionally better off if he were at large is not in dispute, but since the defendant faces a custodial term based upon choices he made, he should not now be allowed to hide behind his wife and child.  As to the defendant's military service, while it is certainly admirable that he served his country, that fact alone should not excuse his post-military conduct, which includes conspiring to distribute cocaine and a formal association with organized crime, including crimes carried out to further the interests of such a dangerous criminal enterprise.[4]

The government respectfully submits that history and characteristics of the defendant weigh in favor of a a custodial sentence within the Guidelines range.

---

[4] The defendant's sentencing submission makes clear that he continues to fail to take responsibility for his actions and their consequences, including his contention that this case has ruined him financially, specifically by, among other things, depleting his two year old son's college savings.  (See Def.'s Ltr. at 4, 10). Initially, the defendant was appointed a CJA lawyer; he chose to then retain two separate counsel, including Mr. Zissou, and now seeks to use that decision and its effect on his financial resources as mitigating factors for his sentencing.

The Honorable Brian M. Cogan
July 11, 2012
Page 6

    D.    The Need for the Sentence Imposed

This Court is well acquainted with the danger that narcotics trafficking presents to our community. Even using a conservative estimate, the defendant was responsible for the distribution of 400 grams of cocaine in our community. Additionally, he aligned himself with a dangerous criminal organization, even after beginning his service with the New York City Fire Department. For all of these reasons, there is a need for the sentence imposed to promote respect for the law and to deter not only this defendant, but other prospective organized crime defendants, from engaging in these types of crimes. See 18 U.S.C. § 3553(a)(1), (a)(2).

III. Conclusion

For the foregoing reasons, the government respectfully submits that the Court should impose a sentence within the advisory Guidelines range of 37 to 46 months.

                        Respectfully submitted,

                        LORETTA E. LYNCH
                        United States Attorney

              By:    /S_____
                    Nicole M. Argentieri
                    Marisa M. Seifan
                    Assistant U.S. Attorneys

cc:  Steve Zissou, Esq. (by ECF)
     U.S. Probation Officer Shayna Bryant (by e-mail)