

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NMA/MMS

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 24, 2012

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Anthony Ciliento
           Criminal Docket No. 11-651 (S-1) (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter in connection with the defendant Anthony Ciliento's sentencing, which is scheduled for July 18, 2012.  On March 16, 2012, Ciliento pled guilty to a lesser-included offense of Count One of the above-captioned indictment, charging him with cocaine distribution conspiracy, in violation of 21 U.S.C. § 846.

      For the reasons set forth below, the government respectfully submits that a sentence within the advisory Guidelines range of 37 to 46 months is necessary to provide just punishment for the offense and for specific and general deterrence, pursuant to 18 U.S.C. § 3553(a).

I.    The Applicable Sentencing Guidelines Range

      As set forth in Pre-Sentence Investigation Report ("PSR"), the Probation Department has determined that the defendant's total offense level is 21 and his Criminal History Category is I, resulting in an advisory sentencing range under the United States Sentencing Guidelines ("Guidelines") of 37 to 46 months.  (PSR ¶ 51).

The Honorable Brian M. Cogan
July 11, 2012
Page 2

II. Consideration of Section 3553(a) Factors

  For the reasons set forth below, the government respectfully submits that a sentence including some term of incarceration is necessary to provide just punishment for the offense and for specific and general deterrence, pursuant to 18 U.S.C. § 3553(a).

  A. Legal Standard

  In United States v. Kimbrough, 552 U.S. 85 (2007), the Supreme Court reiterated that, "[w]hile rendering the Sentencing Guidelines advisory, United States v. Booker, 543 U.S. 220, 245 (2005), we have nevertheless preserved a key role for the Sentencing Commission . . . . [D]istrict courts must treat the Guidelines as 'the starting point and the initial benchmark,' Gall v. United States, 552 U.S. 38, 49 (2007)." 552 U.S. at 89. The Court further stated that "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" Id. at 108 (quoting Rita v. United States, 551 U.S. 338, 350 (2007)); see also United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).

  In Gall, the Supreme Court elucidated the proper procedure for sentencing courts to follow in considering whether to adhere to the applicable Guidelines range: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall, 552 U.S. at 49 (citation omitted).  Next, a sentencing court should "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, he may not presume that the Guidelines range is reasonable.  He must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted).

  B. Nature and Circumstances of the Offense

  The charges in this case stem from the defendant's participation in a cocaine distribution organization operating in Brooklyn, New York, between 2002 and 2009.  The defendant was a close friend of the leader and organizer of the drug

The Honorable Brian M. Cogan
July 11, 2012
Page 3

organization, CW-1, who is now cooperating with the government.[1] (Id.)  CW-1 has advised that he first became acquainted with the defendant in 2001 or 2002.  CW-1 further advised that the two men (the defendant and CW-1) became very close quickly.  The defendant participated in the narcotics trafficking organization over many years, including by (1) answering the drug telephone to intake and process customer requests for cocaine, (2) bagging cocaine for distribution, (3) allowing his home to be used for "switch-ups" when the drug "runners" exchanged cocaine between shifts, and (4) meeting with the main cocaine supplier to pick up cocaine and make payments.  (Id.)  According to CW-1, the defendant was typically paid in cocaine for his efforts.

Another cooperating witness CW-2 has advised that the defendant was a customer of the narcotics trafficking organization in the 2000s.[2]  CW-2 further advised that the defendant lent his car to another supervisor in the drug organization for use in making cocaine deliveries.  According to CW-2, the defendant drove CW-2 in his own car to make drug deliveries.  CW-1 had also used Ciliento's residence in order to count drugs and exchange money with other members of the drug organization.

Based upon information provided by CW-1, CW-2 and other confidential sources, the government estimates that the defendant is accountable for approximately 400 grams of cocaine based upon his involvement in the drug organization.

---

[1]  CW-1 pleaded guilty, pursuant to a cooperation agreement with the government, in the Eastern District of New York to: (1) racketeering conspiracy, including predicate acts of extortion/extortion conspiracy, illegal gambling, robbery conspiracy, (2) related firearms charges, and (3) cocaine distribution conspiracy involving five or more kilograms of cocaine. He is cooperating with the government in the hopes of obtaining leniency in sentencing and entry into the Witness Security Program.

[2]  CW-2 pleaded guilty, pursuant to a cooperation agreement with the government, in the Eastern District of New York to cocaine distribution conspiracy involving five or more kilograms of cocaine.  He is cooperating with the government in the hopes of obtaining leniency in sentencing.

The Honorable Brian M. Cogan
July 11, 2012
Page 4

      Narcotics trafficking is a serious offense. CW-1's organization distributed well in excess of five kilograms of cocaine in the New York City area over the time period it operated. Accordingly, the nature and circumstances of the offense weigh in favor of a sentence within the advisory Guidelines range for the purposes of reflecting the seriousness of the offense and promoting respect for the law and general and specific deterrence. See 18 U.S.C. § 3553(a)(1), (a)(2).

   C.   The Need for the Sentence Imposed

      This Court is well acquainted with the danger that narcotics trafficking presents to our community. Even using a conservative estimate, the defendant was responsible for the distribution of 400 grams of cocaine in our community. Additionally, he aligned himself with a dangerous criminal organization. For all of these reasons, there is a need for the sentence imposed to promote respect for the law and to deter not only this defendant, but other individuals from engaging in these types of crimes. See 18 U.S.C. § 3553(a)(1), (a)(2).

III. Conclusion

      For the foregoing reasons, the government respectfully submits that the Court should impose a sentence within the advisory Guidelines range of 37 to 46 months.

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney

                     By:    /S_____
                              Nicole M. Argentieri
                              Marisa M. Seifan
                              Assistant U.S. Attorneys

cc:   Steve Zissou, Esq. (by ECF)
      U.S. Probation Officer Shayna Bryant (by e-mail)